J. D. Loizeaux Lumber Company v. Commissioner
J. D. Loizeaux Lumber Co. v. Commissioner
Docket No. 10504.
United States Tax Court
1947 Tax Ct. Memo LEXIS 182; 6 T.C.M. (CCH) 738; T.C.M. (RIA) 47177; June 20, 1947
*182 1. A debt owing to petitioner on note and open account from a trade customer which respondent disallowed as a deduction in 1943, the year in which petitioner recovered a judgment which was returned unsatisfied, held to have become worthless in 1940, in which year petitioner is entitled to the deduction. 2. Petitioner in 1941 sold stock in another corporation through a broker to a cousin of petitioner's treasurer for a nominal amount. Held, petitioner is not entitled to a long-term capital loss deduction on account of the sale of the stock in 1941, where it failed to establish that the stock had not become worthless in a prior year. 3. Both petitioner and its subsidiary corporation kept books and filed income tax returns on an accrual basis. In the period from 1930 through 1941 the subsidiary became indebted to petitioner on a note, open account, and certain mortgages. In 1942 the subsidiary transferred all its assets to petitioner in consideration of the cancellation of its indebtedness to petitioner. Held, that the amount of bad debt deduction to which petitioner is entitled in 1942 in connection with this transaction may not include interest on the note, open account, and mortgages *183 which neither petitioner nor the subsidiary accrued on their books and which petitioner did not report as income in its tax returns. Edward R. Burt, C.P.A., 259 Broadway, New York 7, N. Y., Theodore Pearson, Esq. and William H. Harrar, Esq., for the petitioner. Francis X. Gallagher, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion In this proceeding respondent determined income tax deficiencies for 1940 of $3,637.72; for 1941, $3,280.90, plus a 10 per cent delinquency penalty of $328.09; and for 1942, $18,740.38. He also determined a deficiency in declared value excess profits tax for 1942 in the amount of $41.62. Petitioner claims an overpayment for 1942. The questions presented are: (1) Whether petitioner is entitled to deduct a bad debt loss of $14,515.31 due from one Alexander Milne in any of the years 1939, 1940, 1941, or 1942; (2) whether petitioner is entitled to a loss deduction for 1941, on account of a sale of stock in Rendol Investing Company; (3) whether petitioner is entitled to a bad debt deduction in 1942 as a result of a transaction whereby petitioner acquired all the assets of the Queen City Improvement Company *184 and, if so, in what amount. Findings of Fact Petitioner is a corporation organized in 1903 under the laws of New Jersey with principal office and place of business in Plainfield, New Jersey. Its returns for the taxable years here in question were filed with the collector of internal revenue for the fifth district of New Jersey. Petitioner's books were kept and its tax returns prepared on an accrual basis. Alexander Milne, a building contractor in Plainfield, New Jersey, had been a customer of petitioner for many years. From 1926 to 1930 his purchases amounted to about $300,000, and from 1931 to 1937 they totaled approximately $119,000. During 1937 petitioner's sales to Milne were $10,481.36, and $37,165.10 was collected from him. At the end of the year he owed a balance to petitioner of $14,515.31 for building materials which petitioner had furnished him. This balance was evidenced in part by a promissory note for $10,499.31 and in part by an indebtedness on open account of $4,016. After 1937 he made no further purchases from petitioner, and petitioner made no further collections from him. Most of the petitioner's customers are building contractors. Approximately 75 per cent *185 of petitioner's merchandise is sold to them on credit, and at least 60 per cent of the customers do not have money to pay for the merchandise until it is fabricated into a building and the contractor has been paid for his work. It is common practice in petitioner's business for a contractor's account to remain unpaid for several years and until such time as he gets one good job which enables him to pay off his existing indebtedness. Meanwhile, it is necessary for petitioner to carry his account. On August 16, 1938, a judgment for $2,974.27 was entered by Phoenix Indemnity Company against Milne; and on July 26, 1940, another judgment for $688.92 was entered by Peter McFayden against Milne. Both of these judgments were unpaid as of February 10, 1947. Milne made a renewal note to petitioner on July 16, 1940, payable two months after date, but he failed to pay it at maturity. There was a fairly good resumption of business in the contracting field beginning in 1940, but Milne, who was growing older, did not participate in it. In the latter part of 1942, petitioner placed the claim against Milne in the hands of an attorney for collection, and on March 17, 1943, petitioner recovered *186 judgment for $12,234.84 (on the note only), which judgment was returned unsatisfied in the same year. Petitioner claimed a deduction in the amount of $14,515.31 as a worthless debt in its 1943 return. Respondent disallowed the deduction in that year, and petitioner did not protest his determination. The Alexander Milne debt of $14,515.31 became worthless in 1940. Lester Renninger, a building contractor, was one of petitioner's customers. He owned a number of shares in Rendol Investing Company, the sole business venture of which was the construction and operation of an apartment building in Plainfield, New Jersey. Petitioner furnished lumber for this construction and charged it to the account of Renninger, who was the contractor for the building. In 1926 Renninger was substantially indebted to petitioner on open account, and on October 2, 1926, he transferred to petitioner 50 shares of stock in Rendol. Petitioner credited his account with $5,000. The property of Rendol was encumbered by a first mortgage, which became due in 1931. In 1933 Rendol permitted the mortgagee to collect the rents from the mortgaged property and apply them to taxes, expenses, and mortgage charges. This *187 arrangement continued until November 5, 1943, when foreclosure proceedings were started against Rendol by the holders of the first mortgage. The property was sold in the foreclosure proceedings on or about March 24, 1944. In 1941 petitioner sold 49 shares of its Rendol stock for $46.55 to Mrs. Wilhelmina H. Bradley, a first cousin of petitioner's treasurer. The sale was made through the brokerage house of Orvis & Company. In its tax return for 1941, petitioner claimed the difference between its cost of the 49 Rendol shares, $4,900, and the selling price, $46.55, as a long term capital loss in the amount of $4,853.45. Respondent disallowed the deduction. Queen City Improvement Company was a corporation organized in 1914 under the laws of New Jersey with principal office and place of business in Plainfield. During all the period here pertinent and up to June 30, 1942, petitioner owned all the stock of Queen City. Queen City kept its books and prepared its tax returns on an accrual basis. Prior to January 1, 1930, by transactions not here material, petitioner had lent $100,000 cash to an unaffiliated third party, had received therefor a mortgage in that amount, and had assigned *188 it to Queen City in exchange for Queen City's promissory demand notes aggregating $100,000, bearing interest at six per cent per annum. On January 1, 1931, Queen City gave petitioner a second renewal note for that amount, payable on demand, and bearing interest at six per cent. This note was entered on the books of petitioner as an asset of $100,000 and on the books of Queen City as a liability of the same amount. It remained outstanding continuously until June 30, 1942. At various times petitioner also made advances to Queen City on open account and furnished building material for the maintenance of many Queen City properties, resulting in a substantial open account indebtedness owed by Queen City to petitioner. The books of the petitioner show the following amounts of indebtedness (note and open account combined), exclusive of interest, owed to it by Queen City as of the dates indicated: January 1, 1931
$184,590.36
January 1, 1932
215,992.30
January 1, 1933
257,916.15
January 1, 1934
269,695.70
January 1, 1935
289,591.02
January 1, 1936
301,049.51
January 1, 1937
167,857.11
January 1, 1938
128,782.60
January 1, 1939
138,207.06
January 1, 1940
142,969.69
January 1, 1941
157,857.97
June 30, 1942
142,943.00
*189 The books of Queen City show its indebtedness to petitioner on the respective dates in substantially identical amounts. On December 31, 1936, Queen City transferred to petitioner the $100,000 mortgage above referred to, together with other mortgages aggregating $25,000 in principal amount, and petitioner credited its accounts receivable from Queen City with an amount equal to the principal and accrued interest on these mortgages, that is, $133,454.14. This reduction is reflected in the reduced amount of the combined note and open account indebtedness of Queen City to petitioner as of January 1, 1937, as shown in the preceding table. Prior to closing the books of both corporations on December 31, 1930, an entry was made on the books of Queen City accruing $6,000 as a liability for interest to petitioner on the $100,000 note indebtedness and an entry was made on petitioner's books accruing $6,000 as interest receivable on the note. Petitioner treated this accrual as income for 1930, included it in its income tax return for that year, and paid tax thereon. From 1931 through 1941 no accrual of interest on the note was entered on the books of either corporation, no interest was accrued *190 on the books of either corporation on the amounts which Queen City owed to petitioner on open account, and petitioner reported no interest on these items as income in its tax returns for those years. It was petitioner's practice to collect interest from its general trade customers on open account indebtedness at the rate of one-half of one per cent a month on the unpaid balance. Its customers were aware of this practice, and petitioner's form of monthly statement to customers always bore a legend "Subject to interest 30 days from date of purchase." On the average, petitioner collected between $4,000 and $6,000 a year as interest on its accounts receivable. In 1927 petitioner had sold lumber to Watchung Apartments, Inc., a corporation which then owned 410-420 Watchung Avenue and which was erecting an apartment building thereon. As security for uncollected bills, notes, or such other claims against Watchung Apartments, Inc., as might later develop, petitioner held a third mortgage on the property in the amount of $25,000. When the building was completed in 1928, the property was encumbered by four mortgages. On February 20, 1929, 410-420 Watchung Avenue was conveyed by Watchung *191 Apartments, Inc., to Queen City, and the latter assumed and agreed to pay all four mortgages then on the property in amounts as follows: First mortgage to Fidelity Union Trust Company in the amount of $85,500; a second mortgage to R. Henry Depew in the amount of $20,000; the third mortgage to petitioner in the amount of $14,471.25; and a fourth mortgage to Fairfield Manor, Inc., in the amount of $16,500, plus interest of $1,199.59. On February 21, 1929, petitioner purchased the fourth mortgage from Fairfield Manor for a cash payment of $2,500. To prevent the loss of its third and fourth mortgages by a then threatened foreclosure, petitioner made the following cash payments during 1929 to the holders of prior liens: March 6, 1929 -
R. L. Lee, Tax Col-
lector
$ 6,743.19
March 6, 1929 -
Fidelity Union Trust
Company for inter-
est
3,847.50
March 6, 1929 -
Fidelity Union Trust
Company for amor-
tization
3,000.00
Sept. 8, 1929 -
Fidelity Union Trust
Company for amor-
tization and interest
2,737.50
Oct. 24, 1929 -
Second mortgagee for
amortization
5,000.00
Dec. 2, 1929 -
Second mortgagee for
amortization and in-
terest
5,570.84
$26,899.03
*192 By reason of the cash payments made by petitioner, the total due petitioner from Queen City in connection with the mortgages was increased to $59,069.87, that is, the total of the balance due on the third mortgage $14,471.25, the amount due on the fourth mortgage $17,699.59, and the $26,899.03 paid to the holders of the prior encumbrances. Petitioner's total tax basis on these items was $43,870.28. In addition, the mortgages provided for interest at the rate of six per cent, but no interest was ever accrued on the books of either petitioner or Queen City or reported by petitioner as income in its tax returns. Fidelity Union Trust Company foreclosed its first mortgage on 410-420 Watchung Avenue and bought in the property at a sheriff's sale, which was confirmed by the New Jersey Chancery Court on June 15, 1940. Balance sheets of Queen City as of December 31 for the years 1930 through 1938, as reported in its tax returns, show that Queen City's assets exceeded its liabilities, including those to petitioner, by more than $100,000. Most of Queen City's assets consisted of real estate, equities in real estate, and junior mortgages. It lost a large number of these assets by foreclosure *193 after 1939. On June 30, 1942, Queen City transferred all of its assets to petitioner in exchange for petitioner's cancellation of Queen City's indebtedness. The minutes of petitioner and Queen City authorizing this exchange provided that if Queen City's assets should exceed its indebtedness to petitioner, petitioner would surrender stock of Queen City to such extent. The value of the assets thus transferred, less the liability of Queen City assumed by petitioner, was $150,032.09. The facts stipulated by the parties which are not set forth herein are adopted by reference. Opinion ARUNDELL, Judge: The first question relates to the Alexander Milne debt. Petitioner took no deduction on account of this debt until it filed its return for 1943, that being the year in which a judgment against Milne was obtained by it and returned unsatisfied. After respondent audited petitioner's 1943 return and disallowed the debt, the petitioner amended its petition in this proceeding to make claim for deduction of the debt in 1939 (for purposes of an operating loss carry-over to 1940), 1940, 1941, or 1942. On brief, petitioner contends primarily that the proper year for the deduction is 1940. *194 Respondent's position on this issue is that there has been no proof that the debt had any value after 1937. We think there is sufficient evidence to demonstrate that the debt did not become worthless prior to 1940. It is true that a taxpayer's beliefs are not controlling on an issue of worthlessness, , but a practical approach is called for in determining the question. The mere inability of the debtor to pay at a particular time, which may be only a temporary condition, cannot compel the conclusion that the debt is worthless as of that time. In determining when a business debt becomes worthless, a practical approach requires that some consideration be given to such factors as the nature of the transaction out of which the debt arose, the course of dealings between the parties, the nature of the business of both debtor and creditor, and other similar circumstances. It appears from the evidence that in the years from 1926 through 1937 Milne had purchased and paid for about $400,000 worth of materials from petitioner. Most of petitioner's customers were contractors who could not pay for material purchases until they had completed their *195 buildings and collected from the owners. It was a common practice in petitioner's business to have to carry the accounts of contractors two or three years until they could obtain a profitable construction job and realize moneys with which to pay their indebtedness. In view of these circumstances, we think respondent's position that the Milne debt had no value after 1937 is not well taken. Nor, in our opinion, is the mere entry of one judgment against Milne in 1938 determinative of the worthlessness of the debt as of that time. It could not then be known whether Milne's financial difficulties would be only temporary. In 1940, however, a second judgment was entered against Milne, and he did not pay either judgment in that year. He gave petitioner a renewal note in July 1940 but failed to pay it at maturity. When there was an improvement of business in the contracting field beginning in 1940, Milne was unsuccessful in getting his share and did not participate in the renewed activity. It was then apparent that he had come upon bad times in his own business and was unable to pay any of the claims against him. In our opinion, sufficiently identifiable events occurred in 1940 to establish *196 the complete worthlessness of the Milne debt, and we accordingly hold that petitioner is entitled to deduct it for that year. The second issue concerns the claimed loss on the Rendol Investing Company stock by reason of its sale in 1941. With respect to this transaction, petitioner's treasurer testified that although the stock was sold through a broker to his cousin, the sale was not prearranged and he did not induce his cousin to buy the stock. Nevertheless, the purchase price paid by Mrs. Bradley was so obviously nominal as to suggest, in view of the other circumstances, that the stock may have had no value prior to the sale. It is well settled that if stock has already become worthless, a taxpayer may not postpone deducting his loss by holding the stock until a later year and then selling it for a nominal sum. ; . Respondent disallowed the loss claimed upon the sale. His position is that the stock had already become worthless in an carlier year. In view of the circumstances of the sale and the nominal purchase price, we think it was incumbent upon petitioner to show that *197 the stock had not become worthless in a prior year. This, in our opinion, petitioner has not done. The action of the mortgagee in taking over the rents in 1933 may or may not have been an identifiable event fixing the worthlessness of the Rendol stock as of that time, depending upon circumstances not made to appear in this record. At least petitioner has not shown that it was not such an event. We may not assume, as petitioner would have us do, that the stock had a potential value merely because the mortgagee did not commence foreclosure proceedings until 1943. There is no evidence as to the amount of the mortgage or the value of the assets of Rendol Investing Company at any time. The proof is insufficient to establish even a potential value for the stock as of the beginning of 1941. We therefore hold that respondent did not err in disallowing the loss claimed by reason of the sale in that year. The bad debt issue in connection with the Queen City transaction in 1942 was raised for the first time in the petition and was not as such the subject of a disallowance in the deficiency notice. The right to a deduction was denied in respondent's answer, and the only ground urged on brief *198 by the respondent for disallowing any deduction is that the advances to Queen City were in reality contributions to capital. He cites . There is nothing in the instant record, however, to support a finding such as was made in the American Cigar case that when the advances were made the petitioner believed that the obligations which they created were worthless and uncollectible. On the contrary, the stipulated facts and other evidence show a real and bona fide relationship of debtor and creditor existing between petitioner and Queen City on the $100,000 note, the open account, and the 410-420 Watchung Avenue mortgage indebtedness. It appears that Queen City was wholly solvent at all times from 1930 through 1938, although it lost many of its assets through foreclosure after 1939. If the value of the assets received by petitioner was less than the amount of the debt owing to it from Queen City, petitioner is entitled to a bad debt deduction for the difference. ; . The question as to which the parties more seriously *199 differ on this issue is whether petitioner's basis for the debt includes interest on the note, open account, and mortgages. No interest was ever accrued by either petitioner or Queen City or reported in petitioner's returns on the note, the open account, or the mortgages, with the exception of $6,000 interest on the note which both corporations accrued in 1930 and which petitioner then reported as income. Petitioner contends that interest should have been accrued; and, as a part of its basis for the debt, it makes claim to $135,273.23 as interest due on the note and open account, and $42,530.11 as interest due in connection with the mortgages. It is willing, if we should hold that these items constitute a part of its basis, to pay whatever tax would have been due in the years from 1931 to 1942 if the claimed interest had been included in its gross income in those years. The explanation offered by petitioner for its failure to accrue interest is that in 1931 and 1932 its president and its treasurer, who were in charge of its financial affairs, were ill and away from the business. It is argued that the failure to accrue was due to mistake or oversight. This, however, is hardly a satisfactory *200 explanation of the failure to accrue interest in all of the years from 1933 through 1942. Furthermore, as to interest on the open account, we cannot assume that merely because a practice existed in petitioner's business to charge its general trade customers with interest on their open account, such practice would extend to an open account indebtedness from its own subsidiary. In any event, section 29.23 (k)-2 of Regulations 111 contains the following provision: "Worthless debts arising from unpaid wages, salaries, rents, and similar items of taxable income will not be allowed as a deduction unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is sought to be made or for a previous year. * * *" We do not understand petitioner to contend that this regulation is invalid, and we think it is an entirely reasonable one. So far as the claimed interest is concerned, petitioner is here attempting to obtain a deduction for loss of items on which it has no cost, which neither it nor Queen City treated as owing to it, and which it never reported as income. Although there is testimony on behalf of petitioner *201 that it did not waive the right to any interest, we are not convinced on this record that the interest it now claims, more or less as an afterthought, represented a valid indebtedness owing from Queen City to petitioner. Nor are we convinced that the failure to accrue interest was due merely to a mistake or oversight. That petitioner is willing to adjust its tax liability for prior years on account of the claimed interest does not justify treating as capital, at this late date, items which petitioner through all these years never treated as income or took through its income account to capital. Not having taken the claimed interest into income and reported it in its returns, petitioner, under the above regulation, has no basis therefor to deduct as a bad debt. Cf. ; see also (No. 71), and cases there cited. We hold that petitioner's basis for deduction consists of its cost of $43,870.28 in connection with the mortgages, plus the amount of the combined open account and note indebtedness on June 30, 1942, $142,943. It is not clear from the stipulated facts whether this latter item includes the $6,000 *202 interest which petitioner accrued and reported for taxation in 1930. If it does not, the basis will be increased by that amount. The difference between the sum of these items and the value of the assets petitioner received, $150,032.09, will be the measure of the bad debt deduction to which it is entitled for 1942. Decision will be entered under Rule 50.